**Exhibit 2**

> This Opinion is not a
> Precedent of the TTAB

Hearing: September 12, 2023                    Mailed: December 8, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Abercrombie & Fitch Trading Co.*
*v.*
*Srinivasa Rao Gubbala*
_____

Opposition No. 91255288
_____

Susan M. Kayser of K&L Gates LLP
   for Abercrombie & Fitch Trading Co.

Lillian Khosravi of the Law Office of Lillian Khosravi,
   for Srinivasa Rao Gubbala.
_____

Before Zervas, Goodman and Cohen,
   Administrative Trademark Judges.

Opinion by Cohen, Administrative Trademark Judge:

   Srinivasa Rao Gubbala ("Applicant") seeks to register the design mark



on the Principal Register for the following goods in International Class 25:

Opposition No. 91255288

> belts; belts for clothing; belts made of leather; belts of
> textile; business wear, namely, suits, jackets, trousers,
> blazers, blouses, shirts, skirts, dresses and footwear;
> clothing layettes; clothing shields, namely, pads applied to
> the underarms of shirts, blouses and sweaters; clothing
> wraps; clothing, namely, base layers; clothing, namely,
> maternity bands; clothing, namely, wrap-arounds; gloves
> as clothing; hats; hiking jackets; hoodies; hoods; jackets for
> man, women and kids; shirts; shirts and short-sleeved
> shirts; shirts for infants, babies, toddlers and children;
> shirts for suits; shoes; sports jackets; sports bras; sports
> caps and hats; sports jerseys and breeches for sports; sports
> over uniforms; sports shoes; sports singlets; sports vests;
> top hats; underarm clothing shields; undergarments;
> undergarments, namely, waspies; woolly hats; yoga shirts;
> athletic shirts; baby layettes for clothing; camp shirts;
> collared shirts; denim jackets; dress shirts; fingerless
> gloves as clothing; graphic t-shirts; head wraps; knit
> jackets; leather jackets; leather shirts; long-sleeved shirts;
> night shirts; open-necked shirts; polo shirts; shoulder
> wraps; shoulder wraps for clothing; sport shirts; sports
> shirts with short sleeves; t-shirts; tee-shirts; woven shirts.[1]

Abercrombie & Fitch Trading Co. ("Opposer") opposes registration of Applicant's mark, alleging likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), and dilution under Section 43(c) of the Trademark Act, 15 U.S.C. §1025(c), pleading prior common law rights and ownership of Principal Register registrations for bird design marks namely:[2]

---

[1] Application Serial No. 88555046 (filed July 31, 2019), claiming a bona fide intent to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

The application describes the mark as consisting of a black and white bird with outspread wings, with an orange beak and a blue eye, holding a black fish in its mouth. The colors black, white and orange and blue are claimed as a feature of the mark.

[2] Opposer's pleaded registrations are Registration Nos. 3745498, 4022932, 3745497, 3855891, 4091084, 3588412, 4384092 and 3592454.

Opposition No. 91255288

| MARK | GOODS AND SERVICES |
|---|---|
| <br>Reg. No. 3592454[3] | On-line retail store services featuring personal care products, clothing, jewelry, and bags; Retail stores featuring personal care products, clothing, jewelry, and bags in Class 25 |
| <br>Reg. No. 4384092[4] | retail clothing store services in Class 35 |
| <br>Reg. No. 3588412[5] | On-line retail store services featuring personal care products, clothing, jewelry, and bags; Retail store services featuring personal care products, clothing, jewelry, and bags in Class 35 |
| <br>Reg. No. 4091084[6] | Belts; Bottoms; Coats; Footwear; Jackets; Sleepwear; Swimwear; Tops; Undergarments in Class 25 |
| <br>Reg. No. 3855891[7] | Gloves; Headwear; Scarves in Class 25 |

---

[3] Registered March 17, 2009. The registration describes the mark as consisting of a bird design appearing in the color proprietary burgundy-red outlined in a shade of white. The colors proprietary burgundy-red and a shade of white are claimed as a feature of the mark.

[4] Registered August 13, 2013. The registration describes the mark as consisting of a bird design silhouette. Color is not claimed as a feature of the mark.

[5] Registered March 10, 2009. The registration describes the mark as consisting of a miscellaneous design. Color is not claimed as a feature of the mark.

[6] Registered January 24, 2012. The registration describes the mark as consisting of a bird design silhouette. Color is not claimed as a feature of the mark.

[7] Registered October 5, 2010. The registration describes the mark as a bird design silhouette. Color is not claimed as a feature of the mark.

Opposition No. 91255288

| MARK | GOODS AND SERVICES |
|---|---|
|  <br> Reg. No. 3745498[8] | Clothing, namely, blouses, boxer shorts, camisoles, caps, coats, dresses, footwear, hats, jackets, jeans, knit shirts, knit tops, loungewear, pajamas, pants, scarves, shirts, shorts, skirts, sleepwear, sweat pants, sweat shirts, sweaters, swim wear, t-shirts, tank tops, undershirts, underwear and vests, all sold exclusively through applicant's Hollister stores and Hollister website in Class 25 |
|  <br> Reg. No. 4022932[9] | clothing, namely, beachwear, belts, boxer shorts, jackets, jeans, knit shirts, knit tops, pants, shirts, shorts, skirts, sweat shirts, sweaters, swim wear, t-shirts and tank tops sold exclusively in Hollister Co. stores and Hollister Co. online web-sites in Class 25 |
|  <br> Reg. No. 3745497[10] | Clothing, namely, blouses, boxer shorts, camisoles, caps, coats, dresses, footwear, hats, jackets, jeans, knit shirts, knit tops, loungewear, pajamas, pants, scarves, shirts, shorts, skirts, sleepwear, sweat pants, sweat shirts, sweaters, swim wear, t-shirts, tank tops, undershirts, underwear and vests, all sold exclusively through applicant's Hollister stores and Hollister website in Class 25 |

Applicant, in its Answer,[11] denied the salient allegations of the Notice of Opposition and asserts five affirmative defenses. Applicant did not pursue its affirmative defenses at trial and thus, they are deemed waived. *Peterson v. Awshucks SC, LLC*, 2020 USPQ2d 11526, at *2 (TTAB 2020) (party "did not present any evidence or argument with respect to these asserted defenses at trial, so they are deemed waived"); *Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d

---

[8] Registered February 2, 2010. The registration describes the mark as a miscellaneous design with a contrasting border shown in white. Color is not claimed as a feature of the mark.

[9] Registered September 6, 2011. The registration describes the mark as consisting of a bird design silhouette. Color is not claimed as a feature of the mark.

[10] Registered February 2, 2010. The registration describes the marks as consisting of a design appearing in the color proprietary burgundy-red outlined in a shade of white. The colors proprietary burgundy-red and a shade of white are claimed as a feature of the mark.

[11] 4 TTABVUE. Citations in this opinion to the briefs refer to TTABVUE, the Board's online docketing system. *Turdin v. Tribolite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014). Specifically, the number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear.

Opposition No. 91255288

1419, 1422 (TTAB 2014) ("As applicant did not pursue the affirmative defenses of failure to state a claim and unclean hands, either in its brief or by motion, those defenses are waived."); *TPI Holdings, Inc. v. TrailerTrader.com LLC,* 126 USPQ2d 1409, 1413 n.28 (TTAB 2018) ("Respondent also asserted 'estoppel, acquiescence and waiver,' but does not argue any of these in its brief. They are therefore waived.").

The case is fully briefed and on September 12, 2023, the parties appeared before us for an oral hearing.

## I.    **Joint Stipulation and the Record**

On April 15, 2023, the parties submitted a "Joint Stipulation of Fact"[12] which provides in part that the parties "jointly stipulate and agree to the admission and use at trial of the following facts to be entered into the record and admitted into evidence":[13]

- true and correct printouts from the TRADEMARK STATUS & DOCUMENT RETRIEVAL (TSDR) database of Opposer's Registration Nos. 3745498; 4022932; 3745497; 3855891; 4091084; 3533412; 4384092; and 3592454 appended to the stipulation;[14]

- Opposer used each of its pleaded marks in commerce and registered its pleaded marks prior to the filing of Applicant's Mark;[15]

- "Opposer's U.S. trademark Registration Nos. 3,745,498; 4,022,932; 3,855,891; 4,091,084; 3,588,412; 4,384,092 are not limited to any particular color";[16]

---

[12] The stipulation is hereby approved.

[13] 14 TTABVUE.

[14] *Id.* at 3-6 at ¶¶ 2-9.

[15] *Id.* at 6-7 at ¶¶ 10-11.

[16] *Id.* at 7 at ¶ 12.

Opposition No. 91255288

- "Applicant's Trademark Application depicts a gannet, which is a type of seabird, with outspread wings";[17]

- "Opposer's Marks depict a bird with outspread wings";[18]

- That both parties' marks consist of "a bird with outspread wings viewed from the side with the bird's head and beak facing to the left and the bird's outspread wings shown above the bird's body";[19]

- Applicant's Application and Opposer's trademark Registration No. 3745498 both identify "blouses", "caps", "hats", "jackets", "dresses", "footwear" in the description of goods; Applicant's Application and Opposer's trademark Registration No. 4022932 both identify "belts", "jackets", "shirts", "sweaters", "t-shirts" in the description of goods; Applicant's Application and Opposer's trademark Registration No. 3745497 both identify "caps", "blouses", "jackets", "shirts", "skirts", "dresses", "footwear", "undergarments", "sweaters", "t-shirts", "hats", "vests" in the description of goods; Applicant's Application and Opposer's trademark Registration No. 3855891 both identify "gloves" and headwear in the description of goods; Applicant's Application and Opposer's trademark Registration No. 4091084 both identify "belts", "jackets", "footwear", "undergarments", and tops as clothing in the description of goods;[20]

- "Applicant has not yet started sales in USA … promotes its brand on its social media accounts … intends to sell their goods through e-commerce platforms including Amazon, Walmart's online platform";[21] and

- Applicant's Application and Opposer's Registration Nos. 3855891; 4091084; 3588412; 4384092; 3592454 do not contain any restrictions on channels of trade or classes of consumers.[22]

---

[17] *Id.* at 7 at ¶ 13. "Applicant's Trademark Application" is not defined in the parties' stipulation. However, the stipulation references an attached exhibit 2 which contains Opposer's Request for Admission No. 7 and reads "Admit Applicant's trademark application (Serial No. 88/555,046) includes a gannet, which is a type of seabird, with outspread wings." Based on this information, it is clear the parties are referring to the opposed application.

[18] *Id.* at ¶ 14.

[19] *Id.* at ¶¶ 15-16.

[20] *Id.* at 7-8 at ¶¶ 17-21.

[21] *Id.* at 8 at ¶ 22.

[22] *Id.* at ¶¶ 24-25.

Opposition No. 91255288

The parties have also stipulated into the record Opposer's eight pleaded registrations, including Registration No. 4091084 (Opposer's '084 Registration). Because the mark of Opposer's '084 Registration is closer to Applicant's mark than Opposer's registrations which claim color as a feature or which contain a restriction on the channels of trade, we concentrate our analysis on the likelihood of confusion between Applicant's mark and the mark of Opposer's '084 Registration. *See, e.g.*, *N. Face Apparel Corp. v. Sanyang Indus. Co.*, 116 USPQ2d 1217, 1225 (TTAB 2015) (citing *In re Max Cap. Grp. Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010)). If we find confusion likely between Applicant's mark and the mark of Opposer's '084 Registration, we need not consider Opposer's likelihood of confusion claim regarding Applicant's mark and Opposer's other marks. If we find no likelihood of confusion between Applicant's mark and the mark of Opposer's '084 Registration, there would be no confusion between Applicant's mark and Opposer's remaining marks. *In re Max Cap.*, 93 USPQ2d at 1245.

The evidentiary record also includes, in addition to the pleadings, the involved application file (which is part of the record pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b)), and:

Opposer's evidence:

1. Notice of Reliance on webpages which (i) Opposer asserts identify clothing bearing Opposer's bird designs worn by celebrities, and clothing worn in televisions shows and movies; (ii) show the readership of articles and viewership of television shows and movies; (iii) relate to the social media following of a third-party retailer; and (iv) show media and third-party coverage of Opposer's bird designs;[23]

---

[23] 15 TTABVUE.

Opposition No. 91255288

2. Testimony declaration of J.J. Kramer, Opposer's Group Vice President & Associate General Counsel Legal – Intellectual Property, and exhibits;[24] and

3. Rebuttal Notice of Reliance on printed publications consisting of YouTube webpages.[25]

Applicant's evidence:

1. Notice of Reliance on printed publications which includes webpages which Applicant asserts shows the fame of its mark and differences in the parties' marks;[26] and

2. Testimony declaration of Applicant, Srinivasa Rao Gubbala.[27]

Opposer sought to strike exhibits 1-7 and 12 appended to Applicant's Notice of Reliance as well as exhibit 5 appended to Mr. Gubbala's testimony[28] which the Board denied[29] and thus, we consider this evidence and accord whatever probative value the evidence merits.[30] *See Luxco, Inc. v. Consejo Regulador del Tequila, A.C.*, 121

---

[24] 16 TTABVUE.

[25] 25 TTABVUE.

[26] 18 TTABVUE.

[27] 19 TTABVUE 2.

[28] 20 TTABVUE.

[29] 24 TTABVUE.

[30] The Board is capable of assessing the proper evidentiary weight to be accorded the testimony and evidence, taking into account the imperfections surrounding the admissibility of such testimony and evidence. As necessary and appropriate, we will point out any limitations in the testimony or otherwise note that we cannot rely on the testimony and evidence in the manner sought. *See, e.g., Spiritline Cruises LLC v. Tour Mgmt. Serv., Inc.*, 2020 USPQ2d 48324, at *4 (TTAB 2020) (the Board generally does not strike testimony taken in accordance with the applicable rules on the basis of substantive objections but considers its probative value at final hearing); *Milwaukee Elec. Tool Corp. v. Freud Am., Inc.*, 2019 USPQ2d 460354, at *2-3 (TTAB 2019) (overruling objections based on relevance, unfair prejudice, or misleading nature, noting that Board is capable of weighing the relevance and strength or weakness of testimony and evidence, including any inherent limitations), *complaint filed*, No. 20-cv-109 (M.D.N.C. Feb. 3, 2020).

Opposition No. 91255288

USPQ2d 1477, 1479 (TTAB 2017), *appeal dismissed per stipulation*, No. 17-00345 (E.D. Va. August 24, 2017); *U.S. Playing Card Co. v. Harbro, LLC*, 81 USPQ2d 1537, 1540 (TTAB 2006). There are no other objections to the evidence.

## II.    Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action is an element of the plaintiff's case in every inter partes case. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837 (Fed. Cir. 2020), *cert. denied*, 142 S. Ct. 82 (2021); *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). To establish entitlement to a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute, and (ii) a reasonable belief in damage proximately caused by the registration of the mark. *Corcamore*, 2020 USPQ2d 11277, at *4; *see also Empresa Cubana*, 111 USPQ2d at 1062; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Spanishtown Enters., Inc. v. Transcend Res., Inc.*, 2020 USPQ2d 11388, at *1 (TTAB 2020).

Even though Applicant has stipulated to Opposer's entitlement to oppose registration of Applicant's mark, Applicant disputes Opposer's entitlement.[31] In view of the stipulation, and TSDR printouts of Opposer's pleaded registrations which demonstrate that they are valid, subsisting and owned by Opposer, we find that

---

[31] 29 TTABVUE 10.

Opposition No. 91255288

Opposer has an entitlement to pursue a statutory cause of action. *See, e.g.*, *Shenzhen IVPS Tech. Co. v. Fancy Pants Prods., LLC*, 2022 USPQ2d 1035, at \*13-14 (TTAB 2022) (valid and subsisting pleaded registration establishes opposer's direct commercial interest in the proceeding and its belief in damage) (citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000)).

## III.  Priority

Because Opposer's '084 Registration is of record and there is no pending counterclaim to cancel the registration, priority is not at issue with respect to the marks and goods and services covered by the registration. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974); *Penguin Books Ltd. v. Eberhard*, 48 USPQ2d 1280, 1286 (TTAB 1998). Further, the parties have stipulated that Opposer has used each of its pleaded marks in commerce and registered its marks prior to the filing of Applicant's mark.[32]

## IV.  Likelihood of Confusion

We now consider Opposer's claim of likelihood of confusion under Section 2(d) of the Trademark Act. "Not all *DuPont* factors are relevant in each case[.]" *Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 2020 USPQ2d 10341, \*3 (Fed. Cir. 2020). Our determination of Opposer's claim of likelihood of confusion is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.*,

---

[32] 14 TTABVUE 6-7 at ¶¶ 10-11.

Opposition No. 91255288

476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*DuPont*"); *see also In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003).

### A. The Goods, Channels of Trade, Classes of Consumers and Conditions of Sale

We consider first the *DuPont* factors regarding the "similarity or dissimilarity and nature of the goods or services as described in an application or registration," the "similarity or dissimilarity of established, likely-to-continue trade channels," and the conditions under which and buyers to whom sales are made, *i.e.*, "impulse" versus careful, sophisticated purchasing. *DuPont*, 177 USPQ at 567. We make our determinations for these factors based on the goods as they are identified in the application and Opposer's '084 Registration. *See Stone Lion Cap. Partners, LP v. Lion Cap. LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014); *In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997).

The parties stipulated that Applicant's Application and Opposer's '084 Registration both identify "'belts', 'jackets', 'footwear', 'undergarments', and tops as clothing in the description of goods."[33] Likelihood of confusion will be found as to the entire class if there is a likelihood of confusion with respect to any item in the identification of goods for that class. *Tuxedo Monopoly, Inc. v. General Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981).

In addition, given that the parties' goods, are in part identical and the lack of limitation with respect to trade channels or classes of consumers in the identifications

---

[33] 14 TTABVUE 8 at ¶ 21.

Opposition No. 91255288

of goods in Applicant's Application and Opposer's '084 Registration, we may, and do, presume that the channels of trade and classes of purchasers for these goods are the same. *See Hewlett-Packard co. v. Packard Press, Inc.,* 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002) ("absent restrictions in the [registrations], goods and services are presumed to travel in the same channels of trade to the same class of purchasers."); *In re Smith and Mehaffey*, 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers."). We also find that the purchasers of the parties' goods are members of the general public. *See, e.g., In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1638 (TTAB 2009) ("We have no authority to read any restrictions or limitations into the registrant's description of goods.").

Notwithstanding its stipulation, Applicant distinguishes its goods by arguing that Opposer does "not focus on sportswear, instead focusing on casual fashion and accessories, which differs [from A]pplicant's future products which will focus on sportswear."[34] Applicant further argues that Opposer's goods are "sold through their own website and physical stores. Opposer's trademark registrations are specifically for online retail shops in class 35 or they indicate that the goods they are registered for within class 25 are specifically for good[s] that are sold within the retail or online retail stores of Opposer."[35] However, we must base our decision on the identification of goods in the pleaded registration and subject application which includes all goods

---

[34] 29 TTABVUE 14.

[35] *Id.* at 15.

Opposition No. 91255288

of the type identified, without limitation as to their nature or price. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 107 USPQ2d 1167, 1173 (Fed. Cir. 2013). Applicant's arguments ignore that Opposer's '084 Registration is not restricted by channels of trade or classes of consumers, and also ignores the parties' stipulation.[36]

Applicant argues that the parties' purchasers differ because it intends to sell "inexpensive goods" whereas "Opposer's goods are sold at a wide range of price points, from low-cost to expensive ... The largest target markets of consumers of Opposer's product are trendy teenagers."[37] These arguments are an admission that both parties offer for sale inexpensive goods. Further, as noted, the parties' respective identifications of goods do not contain any trade channel or purchaser limitation, and Opposer's identification does not restrict sales of Opposer's goods to teenagers, and we do not read such limitations into the identifications of goods. *See Squirtco v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 940 (Fed. Cir. 1983) ("There is no specific limitation and nothing in the inherent nature of Squirtco's mark or goods that restricts the usage of SQUIRT for balloons to promotion of soft drinks. The Board, thus, improperly read limitations into the registration.").

Therefore, both parties' consumers must be deemed to encompass the general purchasing public, including teenagers who purchase Opposer's clothing items. *The Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 USPQ2d 1629, 1640 (TTAB 2007). In addition,

---

[36] 14 TTABVUE 8 at ¶¶ 24-25

[37] 29 TTABVUE at 15.

Opposition No. 91255288

because the identifications contain no limitations as to price points, we must presume that the parties' goods encompass relatively inexpensive goods, which would be the subject of impulse purchases. *See Hard Rock Café Int'l (USA) Inc. v. Elsea,* 56 USPQ2d 1504, 1513 (TTAB 2000) (t-shirts are impulse purchases); *see also Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000) ("When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care."); *In re i.am.symbolic*, 116 USPQ2d 1406, 1413 (TTAB 2015); *Jansen Enters. Inc. v. Rind*, 85 USPQ2d 1104, 1108 (TTAB 2007).

In view of the foregoing, the *Dupont* factors regarding the overlapping channels of trade and classes of purchasers weigh in favor of finding a likelihood of confusion. In addition, because the goods overlap, the degree of similarity between the marks necessary to find a likelihood of confusion is reduced. *In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed.Cir. 2012); *In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010); *In re Max Cap.*, 93 USPQ2d at 1248.

### B. Strength of Opposer's Mark

Before addressing the similarity or dissimilarity of the marks, we consider the strength of Opposer's mark, to ascertain the scope of protection to which it is entitled. "A mark's strength is measured both by its conceptual strength … and its marketplace strength …." *In re Chippendales USA, Inc.*, 622 F.3d 1346, 96 USPQ2d 1681, 1686 (Fed. Cir. 2010); *Top Tobacco, L.P. v. N. Atl. Operating Co.*, 101 USPQ2d 1163, 1171-72 (TTAB 2011) (the strength of a mark is determined by assessing its

Opposition No. 91255288

inherent strength and its commercial strength); *Tea Bd. of India v. Republic of Tea Inc.*, 80 USPQ2d 1881, 1899 (TTAB 2006). Evidence of third-party use and registration may bear on the strength of a mark. *See Juice Generation, Inc. v. GS Enters. LLC,* 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015). Commercial strength or fame "may be measured indirectly by the volume of sales and advertising expenditures in connection with the goods or services sold under the mark," and may be "supported by other indicia such as length of time of use of the mark; widespread critical assessments; notice by independent sources of the goods or services identified by the marks; and the general reputation of the goods or services." *New Era Cap Co. v. Pro Era, LLC,* 2020 USPQ2d 10596, at *10-11 (TTAB 2020).

### 1. Conceptual Strength

Turning first to conceptual strength, conceptual strength is a measure of a mark's distinctiveness. *In re Chippendales*, 96 USPQ2d at 1686. Distinctiveness is "often classified in categories of generally increasing distinctiveness[:] ... (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753 (1992). "[T]hird-party registration evidence that does not equate to proof of third-party use may bear on conceptual weakness if a term is commonly registered for similar goods or services." *Tao Licensing, LLC v. Bender Consulting Ltd.*, 125 USPQ2d 1043, 1075 (TTAB 2017) ("third-party registration evidence that does not equate to proof of third-party use may bear on conceptual weakness if a term is commonly registered for similar goods or services") (citation omitted); *In re Morinaga Nyugyo Kabushiki Kaisha*, 120

Opposition No. 91255288

USPQ2d 1738, 1745-46 (TTAB 2016) ("Third-party registrations used in this manner are not evidence that customers are accustomed to seeing the use of other, similar, marks in the marketplace, but rather evidence that a term is suggestive or descriptive of the relevant goods or services. Such terms may be conceptually weak because the more descriptive a term is, the less likely prospective purchasers are to attach source-identifying significance to it."). Evidence of third-party use of similar marks for similar services "can show that customers have been educated to distinguish between different marks on the basis of minute distinctions." *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1136 (Fed. Cir. 2015) (citation omitted).

In assessing the impact of third-party use or registrations, we look to whether the third-party marks and goods or services are similar to the mark and goods or services of the opposer's pleaded registration. If not, they can be discounted. *See, e.g.*, *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1284-85 (Fed. Cir. 1984) (discounting third-party evidence, noting: "None of these marks has a 'SPICE (place)' format or conveys a commercial impression similar to that projected by the SPICE ISLANDS mark, and these third-party registrations are of significantly greater difference from SPICE VALLEY and SPICE ISLANDS than either of these two marks from each other."); *Palisades Pageants, Inc. v. Miss Am. Pageant*, 442 F.2d 1385, 169 USPQ 790, 793 (CCPA 1971) (discounting third-party evidence, noting: "we are of the opinion that appellant's mark is closer to appellee's than even the closest of the third-party registrations in that it bodily incorporates appellee's mark, merely

Opposition No. 91255288

adding an adjective to the beginning thereof which, as the board observed, 'directs attention to the words which follow.'").

Applicant argues that the "conceptual strength of Opposer's mark is not one that affords a high degree of protection. The design itself is a basic design …. There are no artistic details to the bird outside of the basic outline of the body of a seagull, nor is there a wide variety of color. … Even the marks that do not claim color do not have the detailing of a bird, focusing instead on the silhouette of a bird."[38] Applicant further argues that even though Opposer's mark is "widely known, … that does not grant Opposer a monopoly on all bird designs … a mark that is very different from Opposer's mark would be easy to recognize as not connected with Opposer's mark."[39] In support of these arguments, Applicant does not introduce any evidence of third-party marketplace uses; it relies on its Manager Member, Mr. Gubbala, who testifies that "[w]hile no formal search was conducted, it is clear that birds are a popular choice for various logos … Since the beginning of this opposition I have come to learn that there are over 500 live bird marks currently with the USPTO."[40] Mr. Gubbala appended as an exhibit what appears to be a trademark search result for marks that comprise or include a bird design in Class 25 in the form of a chart.[41]

---

[38] 29 TTABVUE 17.

[39] *Id.*

[40] 19 TTABVUE 5 at ¶ 8.

[41] *Id.* at 32-534. The chart lists the marks, purported status of the application or registration, owner names and the goods or services.

While an applicant may try to show that a registered mark is weak (and that the applicant's mark is different enough to be unlikely to cause confusion), such proofs have a statutory limit. All marks registered on the Principal Register are presumed valid and distinctive, *see* 15 U.S.C. § 1057(b), and even if they are weak, they are still afforded protecting from confusingly

Opposition No. 91255288

There is no testimony regarding the source of the search nor is there any indication which database was used to conduct the search. As indicated above, the Board previously addressed the nature of this exhibit in connection with a motion to strike. And as noted in the Board's December 2, 2012 order, the "exact identity of the document is unclear from the testimony" but likely is "a search report provided in a chart format which lists registrations and applications … seemingly generated or provided by a third party" and that "[a]ny third-party registrations or applications listed thereon are not of record. The Board can give the registrations no substantive consideration and they are not proof of any matters asserted therein."[42]

It is well established that third-party registrations may not be made of record by such a listing.[43] *Carl Karcher Enters. Inc. v. Stars Restaurants Corp.*, 35 USPQ2d 1125, 1130 (TTAB 1995); *see also In re Dos Padres Inc.*, 49 USPQ2d 1860, 1861 n.2

---

similar marks. *See, e.g.*, *Conde Nast Publ'ns, Inc. v. Miss Quality, Inc.*, 507 F.2d 1404, 184 USPQ 422, 424 (CCPA 1975) ("Although this court has often referred to the 'scope of protection,' 'degree of protection,' and 'latitude of protection' to be accorded marks—'limited' in the case of 'weak' marks and 'broad' or 'wide' in the case of 'strong' marks, it has, nevertheless, made it clear that the decisive question is whether there is a likelihood of confusion, mistake, or deception for purposes of 15 U.S.C. § 1052(d). Therefore, if there is such likelihood, that ends the matter whether appellant's mark be termed 'weak' or 'strong.') (citation omitted).

[42] 24 TTABVUE 10-12.

[43] Even if a third-party federal registration has been properly made of record, its probative value is limited, particularly when the issue to be determined is likelihood of confusion, and there is no evidence of actual use of the mark shown in the registration. *See AMF Inc. v. American Leisure Prods., Inc.*, 474 F.2d 1403, 177 USPQ 268, 269 (CCPA 1973) (not evidence of what happens in the market place or consumer familiarity); *Weider Publ'ns, LLC v. D&D Beauty Care Co.*, 109 USPQ2d 1347, 1351 n.10 (TTAB 2014) (third-party registrations do not constitute evidence of use, thus of limited probative value to show mark is weak); *Nat'l Football League v. Jasper Alliance Corp.*, 16 USPQ2d 1212, 1215 n.3 (TTAB 1990) ("It is well settled that a search report does not constitute evidence of the existence of a registration or use of a mark") (citing *In re Hub Distrib., Inc.*, 218 USPQ 284 (TTAB 1983)).

Opposition No. 91255288

(TTAB 1998) (search reports are not "credible evidence of the existence of the applications and/or registrations listed in such reports"); *In re Smith and Mehaffey*, 31 USPQ2d at 1532 n.3 ("[T]he Board will not consider copies of a search report or information taken from a private company's data base as credible evidence of the existence of the registrations listed therein.") (citing *In re Hub Distrib.*, 218 USPQ 284); *Weyerhaeuser Co. v. Katz*, 24 USPQ2d 1230, 1231-32 (TTAB 1992) (trademark search reports from private companies are neither printed publications nor official records). Moreover, "[i]t is well settled that the Board does not take judicial notice of USPTO records." *UMG Recordings Inc. v. O'Rourke*, 92 USPQ2d 1042, 1046 (TTAB 2009); *Beech Aircraft Corp. v. Lightning Aircraft Co.*, 1 USPQ2d 1290, 1293 (TTAB 1986) (Board refused to take judicial notice of petitioner's pleaded and rejected, application for purposes of establishing petitioner standing).

Keeping in mind the limitations noted above, we also find that over 350 marks in the search report are for different birds, are in different postures or contain additional matter and not simply a bird design and hence convey a commercial impression dissimilar to that projected by Opposer's mark. These differences render them dissimilar, and hence irrelevant, to the registered mark. *See Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241, at *25 (TTAB 2021) ("[W]hile the registered marks all contain the word 'MIRAGE,' they contain additional elements that cause many of them to be less similar to Petitioner's mark than Respondent's marks are.").

Notwithstanding, given the number of third-party marks which include a bird design, we can conclude that a bird design, in general, is not unique for clothing items,

but there is no evidence of the use of, and little evidence of the registration of, a design similar to the design forming Opposer's mark.[44] *Cf.*, *Jack Wolfskin*, 116 USPQ2d at 1136 ("extensive" evidence not only of third-party registrations with paw prints but also "of these marks with paw prints being used in internet commerce" for the relevant goods); *Juice Generation*, 115 USPQ2d 1671 (uncontradicted testimony of "a considerable number" of third party uses of similar marks, along with third-party registrations).

### 2. Commercial Strength

As for commercial strength, the record in this case amply demonstrates that Opposer's bird design is commercially strong. Strength "may be measured indirectly, among other things, by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident." *Bose Corp. v. QSC Audio Prods. Inc.*, 293 F.3d 1367, 63 USPQ2d 1303, 1305 (Fed. Cir. 2002). Other relevant factors include "length of use of the mark, market share, brand awareness, licensing activities, and variety of goods bearing the mark." *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1720 (Fed. Cir. 2012).

Opposer's efforts to promote its products bearing the bird design have been substantial (the exact numbers, dollar amounts and expenditures have been

---

[44] Even assuming some degree of conceptual weakness in a bird design, as discussed, this is not dispositive, as "likelihood of confusion is to be avoided, as much between 'weak' marks as between 'strong' marks." *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 109 (CCPA 1974).

Opposition No. 91255288

designated confidential and are not disclosed). Opposer points to these efforts, providing examples of each, including:

- between 2005 to 2021, volume of sales and dollar amounts sold for "products" bearing Opposer's bird mark which are substantial with annual sales remaining steady;[45]

- between 2005 to 2020, annual visitors for Opposer's website www.holisterco.com, mobile app and email subscribers which Opposer asserts "displays and offers for sale apparel bearing" its bird mark and have, on average, risen each year;[46]

- social media accounts on "Facebook, Instagram, and Twitter" that in 2022 include "12 million 'likes' from Facebook users, 5 million followers on Instagram and 665,000 followers on Twitter;[47] and

- limited YouTube series including "This is Summer" which as of March 2022 had 24 episodes having an average of 600,000 views, "The Carpe Life" which as of "March 2022, videos for the 11 part series … had on average received more than one million (1,000,000+) views," and "The Carpe Challenge" which as of "March 2021, videos for the 12 episode series … had on average received more than two hundred thousand (200,000+) views, with many videos exceeding one million to two million … views."[48]

Opposer also submits testimony and evidence of its promotion of its bird mark through "partnerships with various organizations that work with high school students … reaching millions of students and educators."[49] Additionally, there is evidence of unsolicited media coverage which includes display or mention of Opposer's bird mark such as articles on Business Insider and Yahoo Finance.[50]

---

[45] 16 TTABVUE at 3, 5 at ¶¶ 6, 9.

[46] *Id.* at 6-7 at ¶¶ 10-11, 14

[47] *Id.* at 8 at ¶ 17.

[48] *Id.* at 8-9 at ¶ 18-20.

[49] 27 TTABVUE 35; 16 TTABVUE 9-10 at ¶ 22, 227-61.

[50] *Id.*; 15 TTABVUE 11-12 at ¶¶ 37-41, 157-81.

Opposition No. 91255288

Opposer's evidence establishes that Opposer's pleaded bird mark is, at the very least, commercially strong entitling it to a broad scope of protection against confusingly similar marks. *Jos. Phelps Vineyards, LLC v. Fairmont Holdings, LLC*, 857 F.3d 1323, 122 USPQ2d 1733, 1734 (Fed. Cir. 2017); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992). Indeed, Applicant asserts in its brief that Opposer's evidence "supports a finding of significant renown attributable to Opposer's pleaded marks."[51]

Considering both conceptual and commercial strength, we find Opposer's mark is overall a strong indicator of source.

### C. The Similarity or Dissimilarity of the Marks

We now turn to the *DuPont* factor concerning the similarities or dissimilarities of marks, and which are typically compared for similarities and dissimilarities in appearance, sound, connotation and commercial impression. *Palm Bay Imps.*, 73 USPQ2d at 1692. "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach*, 101 USPQ2d at 1721 (quotation omitted). Our focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1740 (TTAB 2014) (citations omitted); *Sealed Air*

---

[51] 29 TTABVUE 20.

Opposition No. 91255288

*Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975); *see also Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("Those who comprise the purchasing public … ordinarily must depend upon their past recollection of marks to which they were previously exposed.") (citation omitted).

When the parties' goods are identical or virtually identical, as we have in this case, the degree of similarity between the marks necessary to support a determination that confusion is likely declines. *See Bridgestone Americas Tire Operations, LLC v. Fed. Corp.*, 673 F.3d 1330, 102 USPQ2d 1061, 1064 (Fed. Cir. 2012); *In re Viterra*, 101 USPQ2d at 1908; *In re Mighty Leaf Tea*, 601 F.3d 1342 , 94 USPQ2d 1257, 1260 (Fed. Cir. 2010); *Century 21 Real Estate. v. Century Life of Am.*, 23 USPQ2d 1698 at 1701; *In re Max Cap.*, 93 USPQ2d at 1248.

For convenience, we reproduce the parties' respective marks below:



Applicant argues that its mark "consists of specific design elements and coloring that are unique to the gannet bird. This is very intentional … Applicant is not trying to emulate Opposer's seagull, nor would Opposer's seagull mark be mistaken for a gannet. These are marks that have extreme differences."[52]

Applicant's argument ignores that the parties' marks both show a similar bird with two outstretched wings and in flight with pointed, closed beaks facing to the left.

---

[52] 29 TTABVUE 13.

Opposition No. 91255288

Indeed, Applicant stipulated that the parties' marks both consist of "a bird with outspread wings viewed from the side with the bird's head and beak facing to the left and the bird's outspread wings shown above the bird's body."[53]Although Applicant's bird has a fish in its beak, the fish is very small in comparison to the remainder of the bird design and despite Applicant's arguments to the contrary,[54] likely not readily discerned and remembered by the consumer.

Looking at the parties' marks in their entireties, the parties' marks have a similar appearance and commercial impression of a bird in flight and the subtle differences (such as the wingtips) are not likely to be recalled by consumers at spaced intervals, given that the average purchaser normally retains a general rather than a specific impression of trademarks. *See Dassler KG v. Roller Derby Skate Corp.*, 206 USPQ 255, 259 (TTAB 1980) (recollections of design "usually hazy, and generally amount to nothing more than general, overall impressions"). While there are differences between the marks, they are insufficient to overcome the overall visual similarities and commercial impression, especially when the parties' goods are in part, identical.

This factor weighs in favor of finding a likelihood of confusion.

---

[53] 14 TTABVUE 6 at ¶¶ 15-16.

[54] Applicant argues that the "fish in particular is of importance as it ties together this logo with the name of the company, Gannetfisher." 29 TTABVUE 19. However, Applicant seeks to register the bird design without Gannetfisher or any words and does not describe its design as a gannetfish in the opposed application.

Opposition No. 91255288

### D. Variety of Goods and Services

The ninth *DuPont* factor takes into account the variety of goods on which a mark is or is not used. *DuPont*, 177 USPQ at 567. If a party in the position of plaintiff uses its mark on a wide variety of goods, then purchasers are more likely to view a defendant's related goods under a similar mark as an extension of the plaintiff's line. *See, e.g.*, *In re Hitachi High-Techs. Corp.*, 109 USPQ2d 1769, 1774 (TTAB 2014)

As we noted earlier in this opinion, Opposer's product line currently extends to various items of clothing, footwear and retail clothing store services and its goods with the mark of the '084 registration do not extend to other product areas. Opposer's uses of its bird design marks as established by the record, are insufficient to persuade us that Opposer has used its marks on an extended variety of goods. Given the relatedness of the parties' identified goods, we find it unnecessary to rely on this factor.

We therefore find the ninth *DuPont* factor to be neutral with respect to a finding of likelihood of confusion.

### E. Actual Confusion

Applicant argues that there is no evidence of actual confusion and that although it has not yet begun to sell its identified goods, it "has been advertising their future products on their website and various social media platforms including Facebook and Instagram."[55]

---

[55] 29 TTABVUE 18.

Opposition No. 91255288

The absence of instances of confusion is meaningful only if the record indicates appreciable and continuous use by the parties of their marks for a significant period of time in the same markets. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645, 1660 (TTAB 2010), *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011); *New Era Cap Co.*, 2020 USPQ2d 10596, at *17; *Gillette Canada Inc. v. Ranir Corp.*, 23 USPQ2d 1768, 1774 (TTAB 1992). There is no evidence regarding the length or frequency of Applicant's advertising, or the consumer exposure of Applicant's advertising. The mere fact that Applicant advertised is not persuasive since there is no way of our determining whether these activities have had any impact on purchasers. *See In re Kwik Lok Corp.*, 217 USPQ 1245, 1248 (TTAB 1983). Moreover, advertising goods is not the same as use on goods. *See also Clorox Co. v. Salazar*, 108 USPQ2d 1083, 1086 (TTAB 2013) ("The mere use of a trademark in the advertising or promotion of goods in the United States is insufficient to constitute use of the mark in commerce, within the meaning of the Trademark Act, where the advertising or promotion is unaccompanied by any actual sale or transport of the goods in commerce, as is the case here."). And, as stipulated by Applicant, Applicant has not yet "started sales in USA."[56]

In sum, the lack of actual confusion is not probative as there has not been ample opportunity for confusion to occur. *See e.g., KME Ger. GmbH v. Zhejiang Hailiang Co.*, 2023 WL 6366806, at *21 (TTAB 2023) (finding no reasonable opportunity for confusion to have occurred where the parties have used their marks

---

[56] 14 TTABVUE 8 at ¶ 22.

Opposition No. 91255288

contemporaneously for, at most, three years); *Barbara's Bakery Inc. v. Landesman*, 82 USPQ2d 1283, 1287 (TTAB 2007) (where the respective marks had coexisted in the marketplace for at least nine years, absence of actual confusion nonetheless deemed "of little probative value" because of the absence of a significant opportunity for such confusion to occur, given "the minimal scope of applicant's actual use of her mark in the marketplace").

We find this *DuPont* factor neutral.

## V.    **Conclusion**

We have carefully considered the evidence and arguments of record relevant to the pertinent *DuPont* factors. In sum, Opposer's mark is a strong indicator of source and the goods, the channels of trade, the classes of consumers and conditions of sale all favor finding a likelihood of confusion.. The variety of goods offered by Opposer and actual confusion factors are neutral.

In view thereof, we conclude that Applicant's mark is likely to be confused with the mark of the '084 registration.

Because we have found that there is a likelihood of confusion, we need not reach Opposer's dilution claim. *See Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1478 (TTAB 2017) (the Board has "discretion to decide only those claims necessary to enter judgment and dispose of the case") (quoting *Multisorb Tech., Inc. v. Pactive Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013)).

**Decision**: The opposition is sustained and registration to Applicant is refused.